UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE J. JACKSON, JR., | No. 2:14-cv-0592 KJM KJN P |
| Plaintiff, | |
| v. | ORDER |
| J. AUSTIN, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff's amended complaint is before the court.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

The undersigned finds that the amended complaint states a potentially cognizable claim for relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b). Specifically, the amended complaint states a claim against defendant Austin for excessive force, in violation of the Eighth Amendment, viz., that Austin's alleged use of force against plaintiff on June 4, 2013, constituted an "unnecessary and wanton infliction of pain," Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir.

1

1  2001), which was allegedly applied, not in "a good-faith effort to maintain or restore discipline,
2  [but] maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).
3  　　　　The undersigned finds that the amended complaint again does not state a potentially
4  cognizable claim for relief based on his claims against the other named defendants.
5  　　　　A.  First Amendment Claims
6  　　　　Plaintiff alleges that defendant Lee violated plaintiff's First Amendment rights, when Lee
7  denied plaintiff his "right to verbally redress a grievance to A/W Matteson," by approaching the
8  conversation among Matteson, inmate Edinbyrd and plaintiff, and ordered defendant Austin to get
9  plaintiff "away from here and search that A--hole." (ECF No. 17 at 3.)  It is unclear whether
10 plaintiff claims that defendant Lee violated plaintiff's First Amendment right to redress a
11 grievance, or plaintiff's right to free speech.
12 　　　　The filing of prison grievances is unquestionably protected conduct.  Bruce v. Ylst, 351
13 F.3d 1283, 1288 (9th Cir. 2003).  The Constitution provides protections against "deliberate
14 retaliation" by prison officials against an inmate's exercise of his right to petition for redress of
15 grievances.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).
16 　　　　To state a viable First Amendment retaliation claim, a prisoner must allege five elements:
17 "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3)
18 that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First
19 Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."
20 Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Conduct protected by the First
21 Amendment includes communications that are "part of the grievance process."  Brodheim v. Cry,
22 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).  District courts must "afford appropriate deference and
23 flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for
24 conduct alleged to be retaliatory."  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing
25 Sandin v. Conner, 515 U.S. 472 (1995)).
26 　　　　However, in the prison context, not all speech is protected speech, and a prisoner does not
27 have the same First Amendment rights as a non-prisoner.  See Bell v. Wolfish, 441 U.S. 520, 545
28 (1979).  "[A] prison inmate retains those First Amendment rights that are not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). A prisoner's First Amendment claim "must be analyzed in terms of the legitimate policies and goals of the corrections system. . . ." Id.

To the extent that plaintiff claims his right to free speech was impaired, another district court explained the unsettled state of the law concerning such claims:

> While "a prison inmate retains . . . First Amendment rights," Pell v. Procunier, 417 U.S. 817, 822 (1974), "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," Price v. Johnston, 334 U.S. 266 285, 68 S. Ct. 1049, 92 L.Ed. 1356 (1948). Surprisingly, prisoners rarely invoke oral complaints as the basis of their retaliation claims -- written complaints compose the backbone of most. Thus, the Ninth Circuit has never had cause to determine whether oral complaints concerning a prisoner's individual circumstances are protected by the First Amendment. The Seventh Circuit, on the other hand, has had the opportunity, holding a prisoner's speech "must relate to a public concern and not just a personal matter to receive First Amendment protection." McElroy v. Lopac, 403 F.3d 855, 858 (7th Cir. 2005); also see Sasnett v. Litscher, 197 F.3d 290, 292 (7th Cir. 1999). Imputing to inmate free-speech claims the "public concern" requirement of public-employee cases, the Seventh Circuit apparently reasoned "an inmate's rights are not more extensive than those of a government employee." See McElroy, 403 F.3d at 858 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 392 (6th Cir. 1999) (en banc)).
>
> In contrast, the Second Circuit has rejected the public concern requirement, at least when the prisoner's speech involved access to the courts. Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000). The court was emphatic on this point, stating "[t]he 'public concern' requirement, developed in context of public employee speech, has no place in the context of prisoner petitions for the redress of grievances, which typically address matters of personal concern." Id. at 87. The pertinent facts in Friedl, however, differ from those of McElroy and the case at bar -- informal verbal complaints did not play a role. The thrust of Friedl's holding was directed at a prisoner's First Amendment right to seek redress, not a prisoner's First Amendment right to verbally speak out. Similarly, the Sixth Circuit has rejected a public concern litmus test for prisoners to access the courts but declined to determine "the appropriateness of explicitly applying the public concern limitation to speech by prisoners, whose free speech rights are uncontrovertedly limited by virtue of their incarceration." Thaddeus-X, 175 F.3d 392.

Teahan v. Wilhelm, 2007 WL 5041440 (S.D. Cal. Dec. 21, 2007). In Teahan, the district court found that the exhibits appended to the original complaint undermined the prisoner's claims,

3

1  whether based on the right to petition the government for redress or the right to free speech,

2  because the exhibits showed that Wilhelm's actions served a legitimate correctional goal.

3        Moreover, a number of district courts have found that verbal challenges to prison officials

4  that are argumentative, confrontational, and disrespectful are not protected by the First

5  Amendment. See Johnson v. Carroll, 2012 WL 2069561 at *33-34 (E.D. Cal. June 7, 2012)

6  (citing cases). In Carroll, the district court rejected the inmate's argument that his verbal

7  statements made to correctional officers incident to a strip search were protected speech, because

8  the statements were argumentative, confrontational, disrespectful, and "laced with expletives."

9  Id. at *34. The court stated that the inmate's "protected recourse for challenging [the strip search]

10  . . . was to file an administrative grievance," and concluded that the plaintiff failed to state a First

11  Amendment retaliation claim based on conduct by prison officials immediately after the search.

12  Id.

13        Further complicating the screening of the First Amendment claim is plaintiff's prior

14  verified statement that Matteson, Edinbyrd and plaintiff were discussing the hobby program, not a

15  grievance. Read together, it is unclear whether defendant Lee was aware that these parties were

16  discussing the hobby program, a grievance, or whether Lee believed plaintiff was interfering with

17  Matteson's discussion with Edinbyrd.

18        In any event, plaintiff has not pled factual allegations supporting each of the elements

19  required under Rhodes. Plaintiff is granted leave to amend to clarify his First Amendment claims.

20        B.  Failure to Train

21        Supervisory personnel are generally not liable under § 1983 for the actions of their

22  employees under a theory of respondeat superior. Monell v. Dep't. of Soc. Servs., 436 U.S. 658,

23  691 (1978). Therefore, when a named defendant holds a supervisory position, the causal link

24  between him and the claimed constitutional violation must be specifically alleged. See Fayle v.

25  Stapley, 607 F.2d 858, 862 (9th Cir. 1979). In other words, "[u]nder § 1983 a supervisor is only

26  liable for his own acts. Where the constitutional violations were largely committed by

27  subordinates the supervisor is liable only if he participated in or directed the violations."

28  Humphries v. County of Los Angeles, 554 F.3d 1170, 1202 (9th Cir. 2009), overruled on other

4

1  grounds by <u>Los Angeles Cnty. v. Humphries</u>, 131 S. Ct. 447 (2010).

2  A supervisor's failure to train subordinates may give rise to individual liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons whom the subordinates are likely to come into contact. See <u>Canell v. Lightner</u>, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate that the subordinate's training was inadequate, that the inadequate training was a deliberate choice on the party of the supervisor, and that the inadequate training caused a constitutional violation. <u>Id.</u> at 1214; see also <u>City of Canton v. Harris</u>, 489 U.S. 378, 391 (1989); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 681 (9th Cir. 2001).

Here, plaintiff claims, in conclusory fashion, that the actions of defendants Austin and Lee "were a result of a lack of training . . . which is the responsibility of A/W Matteson for Level III Staff, E. Allen and G. Swarthout for CSP-Solano." (ECF No. 17 at 3.) This allegation, standing alone, is insufficient. A single incident in which a subordinate disregarded correction procedures, without more, does not demonstrate inadequate training. In addition, plaintiff pled no facts connecting defendants Allen and Swarthout to the incident on June 4, 2013. As plaintiff was informed in the court's prior screening order, "a supervisor may be found liable under Section 1983 only if he personally participated in the challenged conduct or knew about, but failed to prevent, the challenged conduct." (ECF No. 10 at 3.) Thus, plaintiff's allegations based on defendants' conduct subsequent to the events of June 4, 2013, independently fail to state a claim. Accordingly, plaintiff has failed to state a claim for failure to train. Plaintiff is granted leave to amend this claim, if he can do so.

C.  <u>Exhaustion of Administrative Remedies</u>

In his amended complaint, plaintiff claims he filed an appeal or grievance concerning all of the facts contained therein, but in section c, plaintiff states that at the second level, "it was determined that the defendant did not violate policy." (ECF No. 17 at 2.) Plaintiff made a similar statement in his original complaint. (ECF No. 1 at 2.) Plaintiff appended a copy of his July 12,

////

////

5

2013 appeal[1] in which he claimed that Officer Austin's actions of "slamming" plaintiff to the ground was no longer justified according to the rules violation report plaintiff received on June 14, 2013. (ECF No. 1 at 30.) Plaintiff asked that Austin be reprimanded and plaintiff receive compensation for his back injuries. (Id.) Plaintiff's appeal was processed as a claim that defendant Austin used excessive force during the June 3, 2014 incident.

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002).

Compliance with the exhaustion requirement is mandatory for any type of relief sought. Booth v. Churner, 532 U.S. 731, 739, 741(2001) (holding that prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process); accord Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure.").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. See Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a

---

[1] Exhibits appended to a complaint are a part thereof for all purposes. See Fed. R. Civ. P. 10(c). Although plaintiff did not re-append his exhibits to the operative amended complaint, the exhibits submitted by plaintiff remain a part of the court record.

"Director's Level Decision," or third level review, with respect to his issues or claims. Id. § 3084.1(b).

As noted above, the PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 83-84. When the rules of the prison or jail do not dictate the requisite level of detail for proper review, a prisoner's complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). This requirement is so because the primary purpose of a prison's administrative review system is to "notify the prison of a problem and to facilitate its resolution." Griffin, 557 F.3d at 1120.

Non-exhaustion under § 1997e(a) is an affirmative defense. Bock, 549 U.S. at 204, 216. However, where it is clear that a plaintiff has not first exhausted his administrative remedies, courts may dismiss such claims sua sponte. See id. at 199, 214-16 (exhaustion is an affirmative defense and sua sponte dismissal for failure to exhaust administrative remedies under the PLRA is only appropriate if, taking the prisoner's factual allegations as true, the complaint establishes the failure to exhaust); see also Salas v. Tillman, 162 Fed. Appx. 918 (11th Cir. 2006), cert. denied, 549 U.S. 835 (2006) (district court's sua sponte dismissal of state prisoner's civil rights claims for failure to exhaust was not abuse of discretion; prisoner did not dispute that he timely failed to pursue his administrative remedies, and a continuance would not permit exhaustion because any grievance would now be untimely).

Thus, plaintiff is not required to specifically name prison employees in the administrative appeal process. Bock, 549 U.S. at 219. However, plaintiff must include sufficient facts to put prison officials on notice of plaintiff's claims. Griffin, 557 F.3d at 1120 ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay

groundwork for litigation.")

In his grievance CSP-S-13-1666, plaintiff only challenged defendant Austin's actions that took place on June 4, 2013.  Plaintiff raised no First Amendment or failure to train claims, and plaintiff named no other prison official or identified any other individual he claimed to have violated his rights on June 4, 2013.  Thus, grievance CSP-S-13-1666 only exhausts plaintiff's Eighth Amendment claims as to defendant Austin.  Unless plaintiff has exhausted his claims against the remaining defendants through a different administrative appeal, plaintiff should not renew any unexhausted claim in any second amended complaint.  In any second amended complaint, plaintiff should explain how he exhausted such additional claims.  Plaintiff is cautioned that by signing the second amended complaint he certifies his claims are warranted by existing law, including the law that he exhaust administrative remedies, and that for violation of this rule plaintiff risks dismissal of such claims.

D.  Conclusion

For all of the above reasons, plaintiff may elect to proceed on the existing complaint against only defendant Austin, or choose to file a second amended complaint in which he repeats his allegations against defendant Austin, and attempts to state cognizable claims against the other defendants.  Therefore, plaintiff may proceed forthwith by submitting the documents necessary to serve process on defendant Austin, or plaintiff may delay serving any defendant and attempt, in a second amended complaint, to state cognizable claims against additional defendants.  However, if plaintiff elects to serve process on defendant Austin, the court will construe this election as plaintiff's consent to dismissing, without prejudice, the remaining defendants Lee, Matteson, Allen and Swarthout.

Accordingly, IT IS HEREBY ORDERED that:

1. The allegations in the complaint are sufficient to state a potentially cognizable claim against defendant Austin, but not against defendants Lee, Matteson, Allen or Swarthout.  See 28 U.S.C. § 1915A.  Therefore, the claims against defendants Lee, Matteson, Allen and Swarthout are dismissed with leave to amend.

////

8

2. Within thirty days after the service of this order, plaintiff shall file the attached "Notice of Submission of Documents," and indicate therein his choice to proceed in ONE of the following ways:

    i. Plaintiff may file a second amended complaint, in an attempt to restate his claims against defendant Austin, as well as to state potentially cognizable claims against defendants Lee, Matteson, Allen and/or Swarthout.  The second amended complaint will supersede the original complaint, and will be screened pursuant to 28 U.S.C. § 1915A.  However, plaintiff is not obliged to amend his complaint.

    OR

    ii. Plaintiff may proceed on the amended complaint by completing and returning the enclosed materials necessary to serve process on defendant Austin.  The court will transmit these materials to the United States Marshal for service of process pursuant to Fed. R. Civ. P. 4, and defendant Austin will be required to respond to plaintiff's allegations within the deadlines set forth in Fed. R. Civ. P. 12(a)(1).  The court will construe this election as plaintiff's consent to the dismissal, without prejudice, of defendants Lee, Matteson, Allen and Swarthout from this action.

3. The Clerk of the Court is directed to provide plaintiff, with this order, a blank summons, a copy of the endorsed amended complaint filed June 24, 2014 (ECF No. 17), one USM-285 form,[2] and instructions for service of process on defendant Austin.  Within thirty (30) days after service of this order, plaintiff may return the attached Notice of Submission of Documents with the completed summons, the completed USM-285 form, and two (2) copies of the endorsed amended complaint filed June 24, 2014.

4. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated:  September 16, 2014

jack0592.14o

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff previously provided a USM-285 form for defendant Austin.  Provided the service of process instructions have not changed, plaintiff may request that the court use the previously provided USM-285 form.

9

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE J. JACKSON, JR.,<br><br>            Plaintiff,<br><br>       v.<br><br>J. AUSTIN, et al.,<br><br>            Defendants. | No.  2:14-cv-0592 KJM KJN P<br><br>NOTICE OF SUBMISSION OF DOCUMENTS |

In compliance with the court's order filed _____, plaintiff hereby elects:

/___/ **OPTION No. 1**: Plaintiff hereby submits the following documents, with the intent of proceeding on the current complaint:

    ____    1 completed summons form
    ____    1 completed USM-285 form
    ____    2 copies of the endorsed amended complaint filed January 24, 2014
    ____    Plaintiff consents to the dismissal, without prejudice, of defendants Lee, Matteson, Allen and Swarthout.

OR

/___/ **OPTION No. 2**: Plaintiff hereby submits a Second Amended Complaint, attached hereto, and elects to delay service of process on any defendant.

_____        _____
Date                                                                  Plaintiff